JAMES CERRUTI, JR., ET AL. *v.* ALFRED E. BURDICK.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued May 7—decided July 13, 1943.

*F. Howard Stickney* and *L. Horatio Biglow,* for the appellant (defendant).

*Richard Levin,* for the appellee (plaintiff).

JENNINGS, J. This case involves a claimed breach of a written lease by the lessor. The finding may be summarized as follows: On November 5, 1938, Doris Cerruti, hereinafter referred to as the plaintiff, and the defendant entered into a written lease of certain property in Essex. The term of the lease was ten years and the rent $50 a year. It included a covenant for

quiet enjoyment. At the time the lease was executed the plaintiff occupied the property as a roadside diner. The plaintiff delivered the only copy of the lease to the defendant upon the understanding that he would have it recorded. He never did record it but at some later time burned it. About a year after the execution of the lease the defendant made tentative plans to sell the property or occupy it himself, and by December 4, 1939, he had come to the conclusion that the $50 rental was inadequate; also he desired to have the property free for other uses. On that date he wrote the plaintiff: "Your year's lease on diner was up November 5th. As yet have not received $50 as per agreement for first year. This I would like cleaned up as soon as possible. In future rent will be $15 per month and only by the month. I have had several complaints about the odors coming from dumping garbage over bank on edge of swamp, etc. and this must be done away with." The receipt of this letter was the first notice to the plaintiff that her lease had not been recorded. She interviewed the defendant who told her that the written lease had been lost and that without the lease she would be unable to prove that she had any lease on the property. He also insisted that the lease had been only for one year and told her that if she did not like his way of doing business she could get off. The plaintiff believed the defendant's representation that she could not successfully resist eviction and it appeared to her wise to obtain a new location while she could. The plaintiff paid all the rent due under the lease and the $15 per month demanded in the notice. She moved her diner from the property in April, 1940. Her only reason for moving was that she anticipated, because of the defendant's conduct, that he intended to evict her.

Upon these facts the trial court concluded that the

conduct of the defendant first in wrongfully withholding the written lease from record and destroying it, and later in repudiating the lease by advising the plaintiff that she had no such lease, convinced the plaintiff that he had succeeded in terminating her right to possession under the ten years' lease. She was in no way negligent in coming to this conclusion and abandoned the premises within a reasonable time. The acts of the defendant constituted a constructive eviction. Her removal was an acceptance by her of the eviction and not an acquiescence in the termination of the lease nor a waiver of her rights. Judgment was rendered for the plaintiff on the first count of her complaint for her expense of moving and the market value of the unexpired term of the lease.

The first count of the complaint sets up two breaches of the lease by the defendant. The first was based on the erection, by the defendant, of an advertising sign on the leased premises. This issue was found for the defendant. The second was the insistence on additional rent, and it was on this allegation that a breach of the lease was found to have been committed by the defendant.

While the trial court heard evidence as to the circumstances and effect of the demand, it amounted to no more than a notice that more rent must be paid, accompanied by acts from which the trial court inferred that the plaintiff believed she would be evicted. Had she stood on her rights under the lease, there is nothing in the record to indicate that the defendant could have evicted her. In fact, it is probable that the defendant, if well advised, would have abandoned the attempt.

" 'A constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered

some act by which the premises are rendered untenantable.'" *Reid* v. *Mills,* 118 Conn. 119, 122, 171 Atl. 29. It is significant that no case has been cited or found holding that a demand for additional rent even when accompanied by a threat of eviction constitutes a constructive eviction. 32 Am. Jur. 230 et seq., relied on by both parties and the court, cites none. As a matter of fact, the defendant never even told the plaintiff to get out. On the other hand, *Woodworth* v. *Harding,* 75 App. Div. 54, 59, 77 N. Y. S. 969, holds that "A demand of rent or notice to surrender premises if not paid does not, in and of itself, in any way interfere with the possession of the premises by the tenant, and does not constitute an eviction actual or constructive." 2 McAdam, Landlord & Tenant (5th Ed.), p. 1454. As is stated in 2 Tiffany, Landlord & Tenant, p. 1277: "An eviction involves a wrongful act upon the part of the landlord, but there is no legal wrong involved in his making this unjustifiable demand for possession, however morally improper it may be, and the fact that the tenant acts as if it were justified cannot well change its character in this respect. The case is like that of any other unjustifiable demand for the possession of property to which the possessor is foolish enough to yield." However outrageous the conduct of the defendant may have been, it does not constitute a constructive eviction of the plaintiff.

The process of reasoning by which the trial court reached its conclusion is stated in its memorandum. It held that the conduct of the defendant convinced the plaintiff that he had succeeded in terminating her rights under the ten-year lease and that the situation was analogous to the line of cases holding that an eviction on void process or the like constitutes a breach of the lease, and it cited L.R.A. 1918C, p. 323.

An expression of intention is quite a different matter from a positive act, such as a physical eviction. The allegations of the first count of the complaint are not broad enough to cover this claim in any event. Furthermore, to take advantage of a constructive eviction, the tenant must abandon the property within a reasonable time. The plaintiff continued to occupy the property, paying the increased rent, for four months after the receipt of the notice. In the absence of special considerations not present here, this would constitute an acceptance of the termination of the lease as a matter of law. Note, 75 A.L.R. 1117; 32 Am. Jur. 238. The court was in error in concluding that the facts found amounted to a constructive eviction.

The plaintiff also claimed that the facts found proved that she was entitled to recover on the ground of anticipatory breach of the contract by the defendant. ". . . there can be no anticipatory breach of a contract by one party without the acquiescence of the other." *Home Pattern Co.* v. *Mertz Co.*, 86 Conn. 494, 501, 86 Atl. 19. The trial court concluded: "The plaintiff's removal from the premises . . . was simply an acceptance by her of the eviction and was not an acquiescence on her part in the termination of the lease nor a waiver of her rights. . . ." Furthermore, a lease is a unilateral agreement with no such dependency of performance as to make anticipatory breach possible. *In re Edgewood Park Junior College, Inc.*, 123 Conn. 74, 77, 192 Atl. 561. The finding, therefore, affords no basis for the application of this doctrine.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the defendant.

In this opinion the other judges concurred.